## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This matter is currently pending in U.S. District Court Case Number 3:21cv-01568-AC (the "Action"). The parties to this Action are Nicholas Gideonse, M.D., Patrick Allen, in his official capacity as the Director of the Oregon Health Authority ("OHA"), Mike Schmidt, in his official capacity as the Multnomah County District Attorney, and Nicole Krishnaswami, in her official capacity as the Executive Director of the Oregon Medical Board ("Parties"). The Parties have agreed to settle this Action for the consideration set forth in this Settlement Agreement ("Agreement"). The Effective Date of this Agreement is the date on which it is fully executed by all of the parties.

## RECITALS

A. On October 28, 2021, Nicholas Gideonse M.D., ("Plaintiff") filed a lawsuit in the United States District Court for the District of Oregon, No. 3:21cv-01568-AC (the "Lawsuit"), against Kate Brown, in her official capacity as Governor of Oregon, Ellen Rosenblum, in her official capacity as Attorney General of Oregon, Patrick Allen, in his official capacity as Director of the Oregon Health Authority, Nicole Krishnaswami, in her official capacity as Executive Director of the Oregon Medical Board, and Mike Schmidt, in his official capacity of Multnomah County District Attorney ("Defendants"). Shortly before execution of this Agreement, Plaintiff voluntarily dismissed the Governor and the Attorney General without prejudice from this action.

B. The Lawsuit, alleges that the residency requirement in Oregon's Death with Dignity Act (the Act), included in ORS 127.800(11), ORS 127.805(1), ORS 127.815(1)(b), and ORS 127.860, violates the Privileges and Immunities and Commerce Clauses of the United States Constitution. The Act currently provides that only Oregon "residents" may be prescribed medication by Oregon physicians for the purpose of ending their life under the Act. Residency is evaluated based on a non-exhaustive set of factors including possession of an Oregon driver license; voter registration; ownership or leasing of property in Oregon; filing of an Oregon tax return in most recent tax year.

Page 1 - SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS
348787651/CAS/mm8

Exhibit A

C.   Subsequent to the filing of the Lawsuit, the State (1) decided it would not apply or otherwise enforce the residency requirement under the Act; and (2) OHA, OMB, and the Multnomah County District Attorney's Office agreed to draft internal directives stating that they would not apply or otherwise enforce the residency requirement set forth in ORS 127.800(11), ORS 127.805(1), ORS 127.815(1)(b), and ORS 127.860. These internal directives will make clear that they apply only to enforcement of the residency requirement. All Parties shall continue in their respective roles with respect to regulation under the Act according to all of its other terms.

D.   The Parties now wish to settle the Lawsuit and resolve all claims raised therein.

**TERMS OF AGREEMENT**

1.   The State will not apply or otherwise enforce the residency requirement in the Act.

2.   Before the Effective Date, the internal directives referenced in Recital B(2) above will be published internally within each respective agency. Copies of these directives are attached hereto as Exhibits 1, 2, and 3.

3.   As part of the normal agency legislative concept process for the next regular session following execution of this Agreement, OHA will submit a legislative concept that would repeal the residency requirement currently in ORS 127.800(11), ORS 127.805(1), ORS 127.815(1)(b), and ORS 127.860. The legislative concept will include the language set forth in Exhibit 4 to this Agreement. Nothing in this Agreement purports to bind any future Governor of Oregon.

4.   Within seven days of the Effective Date, Plaintiff will file a stipulation of dismissal of the Lawsuit. The dismissal shall be without prejudice and without an award of fees or costs to any Party.

**ENFORCEMENT AND MISCELLANEOUS PROVISIONS**

5.   If any Party believes that another Party is not in compliance with this Agreement, the Party alleging noncompliance may seek enforcement of the terms of the Agreement in the Multnomah County Circuit Court. Should legal action be necessary, the Parties agree to jurisdiction and venue in the Multnomah County Circuit Court.

Page 2 - SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS
348787651/CAS/mm8

6.  Nothing in this agreement precludes Plaintiff from filing a complaint challenging the residency requirement found in the Oregon Death with Dignity Act in state or federal court if (a) any of the agencies that are a party to this Agreement materially modify or reverse their directive issued pursuant to this Agreement or (b) the amendments listed in the legislative concept outlined in Exhibit 4 do not become law during the 2023 legislative session. Defendants reserve all defenses to such a lawsuit.

7.  This Agreement constitutes the entire agreement among the Parties relating to the Action and no other statement, promise, or agreement, written or oral, made by any Party or any agent of any Party that is not contained in this Agreement shall be enforceable.

8.  The persons executing this Agreement on behalf of the respective Parties warrant that they are duly authorized to accomplish the same and possess all requisite authority to bind the represented Parties to all the provisions of this Agreement.

9.  The Parties agree that they have jointly participated in the preparation of this Agreement and that, accordingly, any rule of interpretation construing terms and conditions against the party preparing the Agreement is inapplicable.

10. This Agreement may be executed in counterparts, each of which shall be deemed to be an original but all of which taken together shall constitute one and the same agreement. The Agreement shall become effective when one or more counterparts have been signed by each of the Parties and delivered to the other Party.

**BY OUR SIGNATURES BELOW, WE AGREE TO THE FOREGOING.**

_____  DATED this __25th__ day of March, 2022.
**NICHOLAS GIDEONSE M.D.**
Plaintiff

_____  DATED this __21st__ day of March, 2022.
**PATRICK ALLEN**
**Director of Oregon Health Authority**
Defendant

Page 3 - SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS
348787651/CAS/mm8

Exhibit A

*Nicole Kisl*
**NICOLE KRISHNASWAMI**
**Executive Director of Oregon Medical Board**
Defendant

DATED this __18th__ day of March, 2022.

[signature]
**MIKE SCHMIDT**
Defendant

DATED this __21st__ day of March, 2022.

**APPROVED AS TO FORM:**

_s/ Carla A. Scott_
**CARLA A. SCOTT**, OSB #054725
Senior Assistant Attorney General
Attorney for Defendant State of Oregon

DATED this __21st__ day of March, 2022.

[signature]
**DARIN M. SANDS**, OSB #106624
Attorney for Plaintiff

DATED this __28th__ day of March, 2022.

PUBLIC HEALTH DIVISION
Office of the State Public Health Director
Kate Brown, Governor



800 NE Oregon Street
Portland, OR 97232
Phone: 503-294-1222
Fax: 503-294-1299

**Memorandum**

To: All PHD staff involved with the Death with Dignity Act program

From: Rachael Banks, Public Health Director

Date: March 21, 2022

Subject: Oregon's Death with Dignity Act Policy Directive

---

This memorandum directs all staff regarding application of the residency requirement in Oregon's Death with Dignity Act, specifically the provisions in ORS 127.800(11), ORS 127.805(1), ORS 127.815(1)(b), and ORS 127.860.

As of the date of this memorandum, Oregon Health Authority (OHA) shall not apply or otherwise enforce the residency requirement in Oregon's Death with Dignity Act. The exercise of OHA's discretion is made in consultation with the Oregon Department of Justice after a lawsuit was filed challenging the constitutionality of the residency requirement in the Oregon Death with Dignity Act.

The direction in this memo applies only to enforcement of the residency requirement set forth in ORS 127.800(11), ORS 127.805(1), ORS 127.815(1)(b), and ORS 127.860. OHA shall continue in its respective role with respect to regulation under the Act according to all of its other terms. If you have any questions related to this directive, please forward concerns to the Director's Office.

_Rachael Banks_
Rachael Banks, MPA
Public Health Director

3/21/2022
Date

Cc: Collette Young

OHA 0196 (1/11)

EXHIBIT 1, Page 1 of 1



**Oregon**
Kate Brown, Governor

Medical Board
1500 SW 1st Avenue, Suite 620
Portland, OR 97201-5847
(971) 673-2700
FAX (971) 673-2670
www.oregon.gov/omb

**TO:** OMB Management and Investigations Staff

**FROM:** Nicole Krishnaswami, Executive Director

**SUBJECT:** Enforcement of Oregon's Death with Dignity Act (ORS 127.805-127.860)

**DATE:** March 18, 2022

---

This memorandum directs all staff regarding application of the residency requirement in Oregon's Death with Dignity Act, specifically the provisions in ORS 127.800(11), ORS 127.805(1), ORS 127.815(1)(b), and ORS 127.860.

As of the date of this memorandum, the Oregon Medical Board shall not apply or otherwise enforce the residency requirement in Oregon's Death with Dignity Act. The exercise of the Oregon Medical Board's discretion is made in consultation with the Oregon Department of Justice after a lawsuit was filed challenging the constitutionality of the residency requirement in the Oregon Death with Dignity Act. See *Gideonese v. Brown, Rosenblum, Allen, Krishnaswami, Schmidt*, 21-cv-01568-AC (2021).

The direction in this memo applies only to enforcement of the residency requirement set forth in ORS 127.800(11), ORS 127.805(1), ORS 127.815(1)(b), and ORS 127.860. The Oregon Medical Board shall continue other aspects of regulating and enforcing the Act according to all of its other terms. If you have any questions related to this directive, please contact your immediate supervisor who will forward concerns to the Director's Office/DA.

EXHIBIT 2, Page 1 of 1



# Mike Schmidt, District Attorney

1200 SW First Avenue, Suite 5200
Portland, OR 97204-1193
Phone: 503-988-3162  Fax: 503-988-3643
www.mcda.us

# MEMORANDUM

| | |
|---|---|
| **To:** | All MCDA Staff |
| **From:** | Jeff Howes |
| **cc:** | AAG Carla Scott |
| **Date:** | March 8, 2022 |
| **Subject:** | Update and Issuing Guidance Re:  Oregon's Death with Dignity Act |

This memorandum directs all staff regarding application of the residency requirement in Oregon's Death with Dignity Act, specifically the provisions in ORS 127.800(11), ORS 127.805(1), ORS 127.815(1)(b), and ORS 127.860.

As of the date of this memorandum, Multnomah County DA shall not apply or otherwise enforce the residency requirement in Oregon's Death with Dignity Act.  The exercise of Multnomah County DA's discretion is made in consultation with the Oregon Department of Justice after a lawsuit was filed challenging the constitutionality of the residency requirement in the Oregon Death with Dignity Act.

The direction in this memo applies only to enforcement of the residency requirement set forth in ORS 127.800(11), ORS 127.805(1), ORS 127.815(1)(b), and ORS 127.860. Multnomah County DA shall continue in their respective roles with respect to regulation under the Act according to all of its other terms.  If you have any questions related to this directive, please feel free to contact myself or a Chief DDA directly.

EXHIBIT 3, Page 1 of 1

Exhibit A

## Legislative Concept

The Oregon Health Authority is submitting this legislative concept to delete or repeal the residency requirement in Oregon's Death with Dignity Act, codified at ORS 127.800 to 127.897, as shown below:

### ORS 127.800

The following words and phrases, whenever used in ORS 127.800 to 127.897, have the following meanings:
(1) "Adult" means an individual who is 18 years of age or older.
(2) "Attending physician" means the physician who has primary responsibility for the care of the patient and treatment of the patient's terminal disease.
(3) "Capable" means that in the opinion of a court or in the opinion of the patient's attending physician or consulting physician, psychiatrist or psychologist, a patient has the ability to make and communicate health care decisions to health care providers, including communication through persons familiar with the patient's manner of communicating if those persons are available.
(4) "Consulting physician" means a physician who is qualified by specialty or experience to make a professional diagnosis and prognosis regarding the patient's disease.
(5) "Counseling" means one or more consultations as necessary between a state licensed psychiatrist or psychologist and a patient for the purpose of determining that the patient is capable and not suffering from a psychiatric or psychological disorder or depression causing impaired judgment.
(6) "Health care provider" means a person licensed, certified or otherwise authorized or permitted by the law of this state to administer health care or dispense medication in the ordinary course of business or practice of a profession, and includes a health care facility.
(7) "Informed decision" means a decision by a qualified patient, to request and obtain a prescription to end his or her life in a humane and dignified manner, that is based on an appreciation of the relevant facts and after being fully informed by the attending physician of:
(a) His or her medical diagnosis;
(b) His or her prognosis;
(c) The potential risks associated with taking the medication to be prescribed;
(d) The probable result of taking the medication to be prescribed; and
(e) The feasible alternatives, including, but not limited to, comfort care, hospice care and pain control.
(8) "Medically confirmed" means the medical opinion of the attending physician has been confirmed by a consulting physician who has examined the patient and the patient's relevant medical records.
(9) "Patient" means a person who is under the care of a physician.
(10) "Physician" means a doctor licensed to practice medicine under ORS 677.100 to 677.228.
(11) "Qualified patient" means a capable adult who ~~is a resident of Oregon and~~ has satisfied the requirements of ORS 127.800 to 127.897 in order to obtain a prescription for medication to end his or her life in a humane and dignified manner.
(12) "Terminal disease" means an incurable and irreversible disease that has been medically confirmed and will, within reasonable medical judgment, produce death within six months.

EXHIBIT 4, Page 1 of 3

## ORS 127.805

(1) An adult who is capable, ~~is a resident of Oregon,~~ and has been determined by the attending physician and consulting physician to be suffering from a terminal disease, and who has voluntarily expressed his or her wish to die, may make a written request for medication for the purpose of ending his or her life in a humane and dignified manner in accordance with ORS 127.800 to 127.897.
(2) No person shall qualify under the provisions of ORS 127.800 to 127.897 solely because of age or disability.

## ORS 127.815

(1) The attending physician shall:
(a) Make the initial determination of whether a patient has a terminal disease, is capable, and has made the request voluntarily;
~~(b) Request that the patient demonstrate Oregon residency pursuant to ORS 127.860;~~
(c) To ensure that the patient is making an informed decision, inform the patient of:
(A) His or her medical diagnosis;
(B) His or her prognosis;
(C) The potential risks associated with taking the medication to be prescribed;
(D) The probable result of taking the medication to be prescribed; and
(E) The feasible alternatives, including, but not limited to, comfort care, hospice care and pain control;
(d) Refer the patient to a consulting physician for medical confirmation of the diagnosis, and for a determination that the patient is capable and acting voluntarily;
(e) Refer the patient for counseling if appropriate pursuant to ORS 127.825;
(f) Recommend that the patient notify next of kin;
(g) Counsel the patient about the importance of having another person present when the patient takes the medication prescribed pursuant to ORS 127.800 to 127.897 and of not taking the medication in a public place;
(h) Inform the patient that he or she has an opportunity to rescind the request at any time and in any manner, and offer the patient an opportunity to rescind at the time the patient makes the patient's second oral request pursuant to ORS 127.840;
(i) Verify, immediately prior to writing the prescription for medication under ORS 127.800 to 127.897, that the patient is making an informed decision;
(j) Fulfill the medical record documentation requirements of ORS 127.855;
(k) Ensure that all appropriate steps are carried out in accordance with ORS 127.800 to 127.897 prior to writing a prescription for medication to enable a qualified patient to end his or her life in a humane and dignified manner; and
(L)(A) Dispense medications directly, including ancillary medications intended to facilitate the desired effect to minimize the patient's discomfort, provided the attending physician is registered as a dispensing physician with the Oregon Medical Board, has a current Drug Enforcement Administration certificate and complies with any applicable administrative rule; or
(B) With the patient's written consent:
(i) Contact a pharmacist and inform the pharmacist of the prescription; and

(ii) Deliver the written prescription personally or by mail to the pharmacist, who will dispense the medications to either the patient, the attending physician or an expressly identified agent of the patient.

(2) Notwithstanding any other provision of law, the attending physician may sign the patient's report of death.

### ~~ORS127.860~~

~~Only requests made by Oregon residents under ORS 127.800 to 127.897 shall be granted. Factors demonstrating Oregon residency include but are not limited to:~~
~~(1) Possession of an Oregon driver license;~~
~~(2) Registration to vote in Oregon;~~
~~(3) Evidence that the person owns or leases property in Oregon; or~~
~~(4) Filing of an Oregon tax return for the most recent tax year.~~

EXHIBIT 4, Page 3 of 3